Pamela S. Howland (ISB #6177)
HOLLAND & HART LLP
Suite 1400, U.S. Bank Plaza
101 South Capitol Boulevard
P.O. Box 2527
Boise, Idaho 83701-2527
Telephone:      208.342.5000
Facsimile:       208.343.8869
E-mail:           phowland@hollandhart.com

Attorneys For Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO, SOUTHERN DIVISION

| | |
|---|---|
| LISA BROWN,<br><br>    Plaintiff,<br><br> v.<br><br>CITICORP CREDIT SERVICES, INC.<br><br>    Defendant. | Case No. _____<br><br>**DEFENDANT'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO** |

Defendant CITICORP CREDIT SERVICES, INC. (USA) ("Defendant" or "CCSI"), by and through its attorneys, and pursuant to 28 U.S.C. § 1332(d), 1441, 1446, and 1453, hereby removes this action from the Fourth Judicial District Court, County of Ada, Idaho, to the United States District Court for the District of Idaho. This action may be removed because this Court has jurisdiction over Plaintiff's Complaint pursuant to the Class Action Fairness Act of 2005 ("CAFA"). In support of its Notice of Removal, Defendant states as follows:

## I.   Removal Is Timely.

1.     On or around January 13, 2012, Plaintiff Lisa Brown filed a purported class action complaint in the Fourth Judicial District in the County of Ada, Idaho, claiming violations of the Idaho Wage Claims Act. (Declaration of Pamela S. Howland in Support of Defendant's Notice of Removal ("Howland Decl."), Exs. A-C, Summons, Complaint and Amended Complaint). Plaintiff filed a First Amended Complaint on or about January 17, 2012, asserting the same allegations.  CCSI was served with the Complaint, First Amended Complaint and Summons on January 20, 2012.  (Declaration of Todd Mayhew in Support of Defendant's Notice of Removal to the United States District Court for the District of Idaho ("Mayhew Decl."), ¶ 3.)

2.     This Notice of Removal is timely, pursuant to 28 U.S.C. 1446(b), because it is filed within 30 days of January 20, 2012, when Defendant received Plaintiff's complaint and Summons.  No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## II.   This Court Has Original Subject Matter Jurisdiction Under CAFA.

3.     This lawsuit is a civil action within the meaning of the Acts of Congress relating to the removal of class actions. *See* 28 U.S.C. § 1453.  Plaintiff seeks to represent a class of "all present and former hourly employees at [CCSI's] Meridian call center employed within the relevant limitations period." (Howland Decl., Ex. C, Am. Cmpl. ¶ 1).  Accordingly, this matter is a purported class action as that term is defined in CAFA. 28 U.S.C. § 1332(d)(1)(B) & 28 U.S.C. § 1453.

4.     This Court has original subject matter jurisdiction based on diversity of citizenship under CAFA because (i) this matter was brought as a class action, (ii) there are at least 100 putative class members, (iii) diversity of citizenship exists between the putative

**DEFENDANT'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO - 2**

plaintiff class and CCSI, and (iv) the alleged amount in controversy exceeds $5,000,000 in the aggregate (exclusive of interest and costs). *See* 28 U.S.C. § 1132(d).

### A.    There Are At Least 100 Putative Class Members.

5.     Under CAFA, this Court has jurisdiction only if there are at least 100 putative class members. 28 U.S.C. § 1332(d)(5)(B). Plaintiff alleges that CCSI employs approximately 500 people in its Meridian call center. (Howland Decl., Ex. C, Am. Cmpl. ¶ 4). Therefore, based on Plaintiff's own allegations, the 100-plaintiff threshold is easily met. In fact, CCSI's records show that, as of January 31, 2012, 983 hourly employees were currently employed at the Meridian call center. (*See* Declaration of Paul Gross in Support of Defendant's Notice of Removal to the United States District Court for the District of Idaho ("Gross Decl."), ¶ 2). In addition, CCSI's records show there have been 1,842 hourly employees who have worked at its Meridian call center between January 13, 2010 (or two years before the filing of the complaint) and January 31, 2012. (*Id*).

### B.    Diversity Of Citizenship Exists Between The Parties.

#### 1.    Plaintiff Is A Citizen Of Idaho.

6.     Plaintiff alleges in her Complaint that she "is an individual residing in Boise, Idaho." (Howland Decl., Ex. C, Am. Cmpl. ¶ 2). Plaintiff also seeks to represent a class of "all present and former hourly employees at Citi's Meridian [Idaho] call center[.]" (*Id.* at ¶ 1). Plaintiff stated on her application for employment that she was a resident of Idaho and had worked in the State since at least 1997. (Mayhew Decl., ¶ 7). Defendant's payroll records indicate that Plaintiff pays taxes as a citizen of Idaho. (*Id*). Further, Plaintiff has held an Idaho Driver's License within the past 6 months. (*Id*). Accordingly, Plaintiff is domiciled in Idaho and is an Idaho "citizen" for purposes of diversity.

**DEFENDANT'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO - 3**

### 2.    Defendant Is Not A Citizen Of Idaho.

7.    For diversity purposes, a corporation is a citizen of (1) any State by which it has been incorporated, and (2) the State where it has its principal place of business.  28 U.S.C. § 1332(c)(1).  The Supreme Court recently clarified that the phrase "principal place of business" refers to the corporation's "nerve center," or "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities."  *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1186 (2010).  The corporation's "nerve center" is usually the location of the corporation's main headquarters.  *Id.* at 1192-93.

8.    Defendant CCSI is, and at all relevant times was, incorporated in Delaware.  (*See* Mayhew Decl., ¶ 5).  CCSI's principal place of business is in Jacksonville, Florida and/or New York, New York:  CCSI's corporate headquarters are located in Jacksonville; CCSI's corporate officers and senior management are based in Jacksonville and New York; significant corporate decisions are made and corporate policy are set from Jacksonville and/or New York; and management activities take place in Jacksonville and/or New York.  (*Id.* at ¶ 6).

9.    Thus, Defendant is not a citizen of Idaho and, as a result, is diverse from Plaintiff (and members of the putative class).  Sufficient diversity under CAFA therefore exists.  *See* 28 U.S.C. § 1332(d)(2)(A).

### C.    The Amount Plaintiff Places In Controversy Exceeds $5 Million.

10.    Under CAFA, the amount in controversy component of diversity jurisdiction is satisfied when the aggregated claims of the individual putative class members exceed the sum or value of $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. §§ 1332(d)(2)(a) & (d)(6).  Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint

of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Senate Judiciary Report, S. REP. 109-14, at 42.

11.    Plaintiff has not specified the total amount of damages she seeks for herself or the class beyond that such amount is alleged to be "in excess of $10,000." (Howland Decl., Ex. C, Am. Cmpl. ¶ 13). As a result, CCSI, as the removing defendant, needs to show only by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 969, 699 (9th Cir. 2007) (finding that, "where it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," a removing defendant must demonstrate by a preponderance of the evidence that the threshold amount in controversy is met); *see also Lowdermilk v. U.S. Bank Nat. Assoc.*, 479 F.3d 994, 998 (9th Cir. 2007) (same).

12.    CCSI denies Plaintiff's factual allegations, denies that Plaintiff's claims are appropriate for class action treatment, and denies that Plaintiff or the class she purports to represent are entitled to any relief whatsoever. However, Plaintiff's allegations and prayer for relief have put into controversy an amount that exceeds the $5 million threshold when aggregating the potential class members' claims under 28 U.S.C. §§ 1332(d)(2) & (d)(6).

### 1.    Plaintiff's Allegations.

13.    Plaintiff alleges that she and other allegedly similarly situated employees were not compensated for all hours worked in violation of Idaho law because she "was required to perform work before and after her paid shift," including "logging into the computer system and opening several databases and systems before she clocked in for her shift . . . [and would] have to exit out of all systems while off-the-clock." (Howland Decl., Ex. C, Am. Cmpl. ¶ 2). Plaintiff alleges these actions resulted in "at least" 20 minutes of unpaid work per day (15 minutes to log

on to the computer systems at the beginning of her shift and five minutes to exit out of the programs after her shift concluded). (*Id.* at ¶¶ 5-7). Plaintiff seeks for herself and the putative class compensatory damages for wages and overtime wages owed, statutory penalties, interest, and attorneys' fees and costs. (*Id.* at ¶¶ 13 & p. 7).

14.    The Idaho Wage Claims Act provides two possible limitations periods: either two years after the cause of action accrued for allegedly due and unpaid wages, or six months after the cause of action accrued for allegedly due and unpaid wages in addition to those previously paid. *See* I.C.§ 45-614. Plaintiff does not state in her Amended Complaint which statute of limitations she alleges applies to her claim. For the purposes of removal only, CCSI has assumed that Plaintiff seeks the longer, two-year statute of limitations.[1]

### 2.    CCSI's Calculations To Determine The Amount In Controversy.

15.    During the two years preceding the filing of Plaintiff's Complaint, the 1,842 putative class members worked a total of 1,635,305.70 regular (i.e., non-overtime) hours in 2010, 1,501,332.90 hours in 2011 and 126,981.91 hours through the end of January 2012, for a total of 3,263,620.51 hours. (Gross Decl., ¶ 3). Because not all 1,842 class members worked for CCSI throughout the class period, Defendant has determined a "full time equivalent" employee number for each class year. Each "full time equivalent" is assumed to work 2,000 hours per year in 2010 and 2011, and 167 hours during 2012 (to reflect the first month of 2012). Dividing the number of hours each year by the "full time equivalent hours" for that year provides the number of full-

---

[1] Defendant expressly reserves the right to argue that the six-month statute of limitations applies to this action as a result of further discovery or legal analysis. In the event the Court ultimately holds that the six-month limitation period applies, it will not divest the Court of jurisdiction under CAFA. *See U.S.* v. *Shell Oil Co.*, 602 F.3d 1087, 1091 (9th Cir. 2010) ("jurisdictional facts [under CAFA] are assessed at the time of removal" and "post-removal events . . . do not deprive federal courts of subject matter jurisdiction") (internal brackets and citations omitted).

**DEFENDANT'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO - 6**

time equivalent employees ("FTEs") for that year (818 for 2010, 751 for 2011, and 761 for 2012). These calculations are reflected in the attached Exhibit. (Howland Decl., Ex. G.) This exhibit further provides the number of weeks worked per year (reflecting partial years of approximately 95% of 2010 and one-twelfth of 2012).

16. The putative class members earned an average hourly wage of $12.74 per hour over the putative class period. (Gross Decl., ¶ 4). These employees also received a total of $2,980,457.63 in incentive pay between January 2010 and January 2011, *id.*, which, when divided by the total regular hours worked by the class, comes to an average incentive hourly rate of $0.91. (Howland Decl., Ex. G). Adding the $12.74 average hourly rate to the $0.91 average incentive hourly rate comes to an effective regular rate of $13.65 per hour. The one and one-half overtime premium at this rate is $20.48 per hour. (*See id*).

17. To calculate the alleged amount in controversy, CCSI multiplied the $20.48 hourly overtime rate by the number of alleged 1.66 unpaid hours per week (20 minutes per day, five days per week), by the number of weeks in each year (48 in 2010, 52 in 2011, and 4 in 2012) by the number of FTEs each year. The formula is as follows: [Overtime Rate] x [Unpaid Overtime Hours Per Week Per Employee] x [Weeks Per Year] x [Full Time Equivalents]. This calculation yields the alleged unpaid wages for the putative class per year or partial year. The sum of the alleged unpaid overtime for years 2010-2012 comes to $2,664,239.50. (Howland Decl., Ex. G) Additionally, section 45-615(2) of the Idaho Wage Claims Act provides that a prevailing plaintiff "shall be entitled to recover from the defendant … damages in the amount of three (3) times the unpaid wages found due and owing." I.C. § 45-615(2). Trebling Plaintiff's alleged damages results in a sum of $7,992,718.51. (Howland Decl., Ex. G.)

**DEFENDANT'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO - 7**

18.     Plaintiff has also sought her attorneys' fees and costs in this litigation. (Howland Decl., Ex. C, Am. Cmpl. at p. 4). Section 45-615(2) of the Idaho Code states that "any judgment rendered by a court of competent jurisdiction for the plaintiff in a suit filed pursuant to this section may include all costs and attorney's fees reasonably incurred in connection with the proceedings." I.C. § 45-615(2). Therefore, these potential attorneys' fees are properly included in determining the amount in controversy. *Guglielmino*, 506 F.3d at 478 ("Where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.") (quoting *Lowdermilk*, 479 F.3d at 1000); *see also Gibson v. Chrysler Corp.*, 261 F.3d 927, 942-43 (9th Cir. 2001) (holding attorneys fees were properly considered in determining the amount in controversy); James Wm. Moore, *Moore's Fed. Prac.*, § 102.106[6][a] (3rd ed. 2011) (attorney's fees constitute part of the matter in controversy if a statute mandates or allows payment of attorney's fees).

19.     Although Defendant denies that Plaintiff is entitled to her attorneys' fees, courts within the Ninth Circuit typically approve payments to class counsel based on a "benchmark percentage" of common fund principle in the amount of 25%. *See, e.g., Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) ("In common fund cases such as this, we have established 25% of the common fund as the "benchmark" award for attorney fees."); *see also In re Ventro Corp. Sec.'s Lit.*, 226 Fed. Appx. 711 (9th Cir. 2007) ("A district court may use the 25 percent benchmark in calculating attorneys' fees... as long as the district court considers any special circumstances of the case indicating that a percentage recovery would be either too small or too large."); *Shaffer v. Con't Casualty Co. et al.*, 362 Fed. Appx. 627, 631 (9th Cir. 2010) (affirming appropriateness of benchmark percentage method in common fund cases).

**DEFENDANT'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO - 8**

20.     Based on the $7,992,718.51 amount in controversy, an award of 25% in attorneys' fees would increase the amount in controversy by $1,998,179.63 for a total of $9,990,898.14. (Howland Decl., Ex. G). Thus, Plaintiff's claim for unpaid wages, statutory penalties and attorneys' fees and costs exceed the amount in controversy threshold under CAFA.

## III.    All Other Prerequisites For Removal Are Satisfied.

21.     Plaintiff filed this action in the Fourth Judicial District Court in the County of Ada, Idaho.  Removal to this Court is therefore proper under 28 U.S.C. § 1441(a) because this Court embraces the location where the action was filed.  Defendant will promptly serve Plaintiff with this Notice of Removal and will promptly file a Notice of Removal with the clerk of the Fourth Judicial District Court, County of Ada, Idaho, as required under 28 U.S.C. § 1446(d).  A copy of all process, pleadings, and orders served upon Defendant are attached to the Declaration of Pamela S. Howland.  (*See* Howland Decl., Exs. A-C).

## CONCLUSION

Based on the foregoing, Defendant Citicorp Credit Services, Inc. (USA), desiring to remove this case to the United States District Court for the District of Idaho, requests that the filing of this Notice of Removal shall effect the removal of the suit to this Court.

If any question arises as to the propriety of the removal of this action, Defendant requests the opportunity to present argument in support of its position that this case is removable.

DATED this 9th day of February, 2012.

HOLLAND & HART LLP

By _____
Pamela S. Howland, of the firm
Attorneys for Defendant, Citicorp Credit Services, Inc.

**DEFENDANT'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO - 9**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 9th day of February, 2012 I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

James M. Piotrowski, Esq. – jpiotrowski@hpllp.net
Marty Durand, Esq. – marty@idunionlaw.com
            Attorneys for Plaintiff, Lisa Brown

                                    for HOLLAND & HART LLP

5406377_1.DOCX

**DEFENDANT'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO - 10**