UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LISA BROWN,<br><br>             Plaintiff,<br><br>     v.<br><br>CITICORP CREDIT SERVICES, INC.,<br><br>             Defendant. | Case No. 1:12-cv-00062-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

### INTRODUCTION

The Court has before it Citicorp's Motion to Compel Arbitration and to Dismiss the Second Amended Complaint. The motion is fully briefed and at issue. For the reasons explained below the Court will deny the motion.

### BACKGROUND

Plaintiff Lisa Brown filed a class action under the Idaho Wage Claims Act ("IWCA") and a collective action under the Fair Labor Standards Act ("FLSA"), seeking to recover unpaid wages against her former employer, Citicorp. Brown claims that she and her fellow customer service employees were required by Citicorp to work off-the-clock for at least twenty minutes a day. This was the amount of time it took for the employees to log onto the computer system and prepare equipment at the beginning of a shift, and to log out at the end of the shift.

Memorandum Decision & Order - 1

Citicorp seeks to dismiss Brown's claims on the ground that she signed an arbitration agreement requiring her to individually arbitrate any employment-related disputes.  That arbitration agreement states that "arbitration on an individual basis . . . is the exclusive remedy for any employment-related claims," and it prohibits any employee from "participat[ing] as a class or collective action representative or as a member of any class, collective, or representative action . . . ."

Citicorp argues that Brown, by signing this agreement, waived her right to bring this lawsuit and must pursue her claims through an individual arbitration.  Brown does not dispute that the waiver covers her claims here, but argues that it is void because it violates her substantive rights under the FLSA and the National Labor Relations Act.

## ANALYSIS

Citicorp's arbitration agreement is governed by the Federal Arbitration Act (FAA).  Congress passed the FAA in "response to widespread judicial hostility to arbitration agreements."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011).  The Supreme Court has found that the FAA reflects a "liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."  *Id.*

In a series of decisions, the Supreme Court has consistently favored arbitration and enforced arbitration agreements according to their terms.  For example, the Supreme Court (1) upheld an agreement that sent an age-discrimination claim under the ADEA to arbitration in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991); (2) held that class arbitration could not be conducted when it was not a term of the arbitration

**Memorandum Decision & Order - 2**

agreement in *Stolt–Nielsen S .A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758 (2010); and (3) held that the FAA preempted a California rule that barred class-action waivers in arbitration agreements in *ATT Mobility*, 131 S.Ct. at 1744.

The gist of these cases is that "the FAA requires not just compelling arbitration, but compelling arbitration *on an individual basis* in the absence of a clear agreement to proceed on a class basis." *Jasso v. Money Mart Express, Inc.,* 2012 WL 1309171 at * 9 (N.D. Cal. April 13, 2012) (emphasis in original). Even when it is clear that claimants have little incentive to pursue small claims individually, courts have not allowed collective actions to proceed under the FAA. *Coneff v. AT&T,* 673 F.3d 1155, 1159 (9th Cir. 2012).

To counter this formidable precedent, Brown argues that her waiver deprives her of her substantive right under the FLSA to bring a collective action. She cites a provision of the FAA stating that an arbitration agreement may be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2. The Supreme Court has interpreted this provision: "Like any statutory directive, the [FAA's] mandate may be overridden by a contrary congressional command." *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987).

Brown argues that because the FLSA gives her a statutory right to file a collective action, the FAA's mandate to arbitrate must be "overridden" by this "contrary congressional command." The burden is on Brown to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. *Id.* at 227. "If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim,

**Memorandum Decision & Order - 3**

such an intent will be deducible from [the statute's] text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes." *Id*. (quoting from *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

An analysis of Brown's argument must begin with the Supreme Court's decision in *Gilmer*. There, the Supreme Court ordered to arbitration a dispute under the ADEA, a statute modeled on the FLSA. Although the plaintiff had not filed a collective action and only sought individual relief, he argued generally that arbitration would frustrate the purpose of the ADEA because no collective proceedings could be held in arbitration. In responding, the Supreme Court first noted that the parties had agreed to arbitration rules that allowed collective proceedings in arbitration, and then stated that "even if the arbitration could not go forward as a class action . . . , the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred." *Gilmer,* 500 U.S. at 32. Although the quoted portion is dicta, it is some indication that the Supreme Court would hold that other statutory collective action rights – like those in the FLSA -- could be waived in an arbitration agreement.

Several Circuits have cited the dicta in *Gilmer* to uphold waivers of the FLSA's collective action rights – these Circuits hold that the waiver affects only the employee's procedural right to bring a collective action, not his substantive right to seek recovery under the FLSA for himself, and thus the waiver is valid. *Caley v. Gulfstream Aerospace Corp*., 428 F.3d 1359, 1378 (11th Cir.2005); *Carter v. Countrywide Credit Industries, Inc*., 362 F.3d 294, 298 (5th Cir.2004); *Adkins v. Labor Ready, Inc*., 303 F.3d 496, 503

**Memorandum Decision & Order - 4**

(4th Cir.2002). The Ninth Circuit has reached the same result but in an unpublished decision that cannot be cited for any purpose.[1]

These cases did not address, however, the issue of whether a waiver of FLSA collective action rights violates the National Labor Relations Act (NLRA). Section 7 of the NLRA vests in employees the right "to engage in . . . concerted activities for the purpose of . . . mutual aid or protection." 29 U.S.C. § 157. The right to engage in concerted action for "mutual aid or protection" includes employees' efforts to "improve terms and conditions of employment or otherwise improve their lot as employees through channels outside the immediate employee-employer relationship." *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565-566 (1978). Those "channels' include lawsuits. *See Brady v. National Football League,* 644 F.3d 661, 673 (8th Cir.2011) (holding that "a lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment is 'concerted activity' under 29 U.S.C. § 157").

The National Labor Relations Board has recently held that an employee's lawsuit seeking a collective action under the FLSA is "concerted action" protected by Section 7 of the NLRA. *In re D.R. Horton, Inc*., 2012 WL 36274 (NLRB Jan. 3, 2012).[2] Although some Section 7 rights can be waived by a union acting on behalf of employees, *see Metro. Edison Co. v. NLRB*, 460 U.S. 693, 707-08 (1983), it is unlawful for the employer

---

[1] Citicorp cites this case and argues it to the Court despite the fact that it is an unpublished case from 2001. Under Circuit Rule 36-3, unpublished cases dated prior to 2007 "may not be cited to the courts of this circuit" except in circumstances not present here.

[2] Citicorp argues that *Horton* is not a valid decision because only two Board members joined in the decision. It appears the NLRB disagrees with Citicorp, given the fact that it has cited *Horton* at least twice since it was issued. *See CC1 Limited Partnership*, 2012 WL 4103920 (NLRB Sept. 18, 2012); *Supply Technologies, LLC and Teamsters Local 120*, 2012 WL 6800784 (NLRB Dec. 14, 2012).

**Memorandum Decision & Order - 5**

to condition employment on the waiver of employees' Section 7 rights.  *Retlaw Broadcasting Co. v. NLRB*, 53 F.3d 1002 (9th Cir. 1995).  That is precisely what Brown alleges happened here.

Under *Chevron USA, Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837 (1984), the Court must defer to the Board's interpretation of the NLRA if its interpretation is rational and consistent with the Act.  *Local Joint Executive Bd. of Las Vegas v. NLRB*, 657 F.3d 865, 870 (9th Cir. 2011).  The Board's interpretation in *Horton* of Section 7 of the NLRA is rational and consistent with the Act:  A collective action seeking recovery of wages for off-the-clock work falls easily within the language of Section 7 protecting "concerted action" brought for the "mutual aid and protection" of the employees.[3]

Thus, Citicorp's arbitration agreement waives Brown's Section 7 rights to bring an FLSA collective action.  As discussed, an arbitration agreement may, by the terms of the FAA, be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract."  *See* 9 U.S.C. § 2.  Do legal grounds exist to revoke an agreement to waive Section 7 rights?

Section 7 rights are protected "not for their own sake but as an instrument of the national labor policy."  *Emporium Capwell Co. v. W. Addition Cmty. Org*., 420 U.S. 50, 62 (1975).  Thus, Citicorp's arbitration agreement does more than merely waive Brown's right to a procedural remedy; it bars her from asserting a substantive right that is critical to national labor policy.  A contract that violates public policy must not be enforced.  *See*

---

[3] The Board in *Horton* went on to interpret the FAA and decide that it must give way to the NLRA and the Norris-LaGuardia Act.  The Court declines to give deference to any portion of *Horton* other than its interpretation of the NLRA.  *See Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 144 (2002).

**Memorandum Decision & Order - 6**

*United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 42 (1987) (citing the "general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy"). Moreover, it is unlawful for the employer to condition employment on the waiver of employees' Section 7 rights. *Retlaw Broadcasting Co. v. NLRB*, 53 F.3d 1002 (9th Cir. 1995).

For these reasons, the Court finds that under the FAA, there are legal grounds to revoke the arbitration agreement's waiver of Brown's right to bring a collective action under the FLSA and a class action under the IWCA. Accordingly, the Court will deny Citicorp's motion to compel arbitration and to dismiss Brown's claims.[4]

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Citicorp's motion to compel arbitration and dismiss claims (docket no. 17) is DENIED.



DATED: February 21, 2013

B. Lynn Winmill
Chief Judge
United States District Court

---

[4] In its opening brief, Citicorp discussed at length the NLRA and *Horton* but did not argue that Brown was not covered by the NLRA. Brown raised that argument for the first time in a footnote in its reply brief. *See Reply Brief (Dkt. No. 25)* at n. 9. By waiting until its reply brief to raise this issue, Citicorp gave Brown no opportunity to respond. It would therefore be unfair for the Court to consider Citicorp's argument.

**Memorandum Decision & Order - 7**